IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>EMERALD CASINO, INC.,<br><br>   Debtor.<br>------------------------------------------------<br><br>CHAZ EBERT,<br><br>   Appellant,<br><br>   vs.<br><br>FRANCES GECKER, as trustee<br>of the Chapter 7 bankruptcy estate<br>of EMERALD CASINO, INC.,<br><br>   Appellee. | Case No. 19 C 4376 |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

  Chaz Ebert is a creditor of Emerald Casino, Inc., which is now the subject of a chapter 7 bankruptcy proceeding. She has appealed from a final order of the bankruptcy court on two grounds. First, she argues that the court erred in authorizing a distribution to several of Emerald's other creditors, pursuant to the terms of a settlement agreement between those creditors and the bankruptcy trustee that the bankruptcy court had previously approved. Second, she contends that the bankruptcy court erroneously denied her motion to modify the order approving that settlement agreement.

## Background

  Ebert invested in Emerald in 1999. In 2002, several of Emerald's investors filed

an involuntary chapter 7 bankruptcy petition against Emerald.  Shortly thereafter, the bankruptcy court converted the case to a chapter 11 proceeding.

In October 2007, a group of Emerald's investors—not including Ebert—sued several of its former corporate officers in state court.  The Court will refer to the investors that filed this suit as the "state-court plaintiffs."

In March 2008, the bankruptcy court converted Emerald's case back to a chapter 7 proceeding and appointed Frances Gecker as the trustee of Emerald's bankruptcy estate.  After her appointment, the trustee began developing a case against Emerald's former officers and planned to seek a stay of the state-court plaintiffs' case, pending resolution of her suit on behalf of the bankruptcy estate.

In an attempt to streamline the litigation of the claims against Emerald's former officers, the state-court plaintiffs and the trustee entered into a settlement agreement.  Under the terms of this agreement, the state-court plaintiffs assigned all of their claims against Emerald's former officers to the trustee for joint prosecution.  In exchange, the trustee agreed to evenly split with the state-court plaintiffs any recovery—after deduction of attorneys' fees—from the litigation against the officers.

On October 31, 2008, after giving eighteen-days' notice of the settlement agreement to all of Emerald's creditors, including Ebert, the trustee sought the bankruptcy court's approval of the agreement.  Ebert did not object to (or ask to join in) the settlement agreement, and the bankruptcy court approved it.

In December 2008, the trustee filed suit in federal district court against Emerald's former officers.  By early 2016, the trustee had settled the claims against two officers and had recovered some money under the terms of those settlements.  In April 2016,

the trustee filed a motion before the bankruptcy court, seeking authorization to make a distribution to the state-court plaintiffs under the terms of their agreement to evenly split recoveries from litigation against Emerald's former officers. The trustee gave written notice of the hearing on its motion to Emerald's creditors. The bankruptcy court authorized the distribution.

In April 2019, the trustee had recovered more money from its litigation against Emerald's former officers, and she filed a motion for the bankruptcy court's authorization to make a second distribution to the state-court plaintiffs. Again, the trustee gave written notice of the motion to all of Emerald's creditors. This time Ebert filed an objection. Ebert then appeared at the motion hearing in May 2019, arguing that the second distribution would improperly allow the state-court plaintiffs to recover money in excess of their proofs of claim while Ebert, who had the "exact same claims," would receive nothing. May 23, 2019 Hearing Tr., dkt. no. 8, at 184:24. The bankruptcy court overruled Ebert's objection, concluding that Ebert did not have the same claims as the state-court plaintiffs by virtue of their settlement agreement with the trustee, which is what entitled them to the second distribution. Ebert, by contrast, had elected not to participate in the 2007 state-court case against the former officers and was not a party to the settlement agreement with the trustee.

In June 2019, Ebert filed motions for reconsideration of the second distribution order and modification of the 2008 order approving the settlement agreement between the trustee and the state-court plaintiffs. Ebert sought reconsideration of the second distribution order based on purportedly new evidence showing that the trustee had believed that Ebert was entitled to receive a portion of the second distribution. Ebert

3

also argued that the bankruptcy court should amend the order approving the settlement agreement to prohibit any further distributions to the state-court plaintiffs—including the second distribution that she challenged in the accompanying motion—until Ebert had fully recovered on her proof of claim against Emerald. Granting this motion would have enabled Ebert to receive a share of the second distribution. In Ebert's view, the second distribution and any others in future would otherwise be unfair, because they would permit the state-court plaintiffs to recover in excess of their proofs of claim, while Ebert recovered nothing.

The bankruptcy court denied both motions. The court declined to reconsider its second distribution order, explaining that even if the trustee believed that Ebert was entitled to a share of the second distribution, she could not have made that payment to Ebert. The trustee is bound by the orders of the bankruptcy court, which had approved a settlement agreement authorizing distribution of the trustee's litigation recoveries only to the state-court plaintiffs. Because Ebert was not a party to that court-approved agreement, the trustee lacked authority to make a distribution to her. Thus, the purportedly new evidence of the trustee's beliefs was not a proper basis for reconsideration of the second distribution order.

Next, the bankruptcy court declined to amend the order approving the settlement agreement. The court explained that it was not inequitable to allow distributions from litigation recoveries to the state-court plaintiffs, even if it meant that after the second distribution, they received payments in excess of their proofs of claim. Those individuals had filed suit against the former Emerald officers and later assigned their claims to the trustee, not knowing whether there would be any litigation recovery at all.

Ebert never sued the officers in state court, nor did she assign her claims against them to the bankruptcy trustee.  And Ebert never objected to the settlement agreement between the state-court plaintiffs and the trustee.  The bankruptcy court concluded that under these circumstances, distributions under the terms of the settlement agreement were not inequitable.

## Discussion

Ebert appeals the bankruptcy court's orders authorizing the second distribution to the state-court plaintiffs and refusing to amend the order approving the settlement agreement between the trustee and state-court plaintiffs.  The Court has jurisdiction over Ebert's appeal from the bankruptcy court's final orders, *see* 28 U.S.C. § 158(a)(1), and reviews that court's findings of fact for clear error and its conclusions of law de novo, *In re Jepson*, 816 F.3d 942, 945 (7th Cir. 2016).

### A.     Second distribution order

Ebert contends that the bankruptcy court's order authorizing the second distribution violates chapter 7's purpose of ensuring fair distribution of a debtor's assets amongst its creditors.  In her view, the second distribution was unfair because it allowed the state-court plaintiffs to recover money in excess of their proofs of claim when Ebert had recovered nothing.  She contends that because she suffered the same injuries as the state-court plaintiffs from the conduct of Emerald's former officers, she is entitled to a share of the second distribution.

Despite Ebert's contentions, she does not have the same claim to the litigation recovery as the state-court plaintiffs.  As the bankruptcy court explained, Ebert did not sue Emerald's former officers in state court; she did not assign any claims against them

5

to the trustee; she was not party to the court-approved settlement agreement; and she is therefore not entitled to the litigation recoveries distributed under the terms of that agreement.

Ebert argues that because the trustee led her to believe that she would receive a share of the second distribution, fairness requires giving her a share. But Ebert does not provide any legal authority suggesting that it was error for the bankruptcy court to authorize a distribution under these circumstances. And as the bankruptcy court explained, whatever the trustee's beliefs, she had no authority to distribute to Ebert a share of the litigation recoveries from Emerald's former officers. The court-approved settlement agreement authorized a distribution only to the state-court plaintiffs.

Finally, Ebert argues that, despite not being party to the settlement agreement, she is entitled to a "share pro rata" in the litigation recovery against Emerald's former officers. Ebert Opening Br., dkt. no. 10, at 20. But Ebert provides no legal basis for this claim. The case that Ebert cites does not support her argument: it addressed whether a professional employed and paid by a bankruptcy trustee could later be forced to disgorge that compensation when there are insufficient funds to pay the estate's other expenses. *See In re Metro. Elec. Supply Corp.*, 185 B.R. 505, 508 (Bankr. E.D. Va. 1995).

In sum, the bankruptcy court did not clearly err in concluding that Ebert does not have a viable claim to share in the second distribution to the state-court plaintiffs. The Court therefore affirms the bankruptcy court's second distribution order, which was consistent with the court-approved settlement agreement.

**B.     Settlement agreement order**

Ebert also argues that the bankruptcy court erred in denying her motion to amend the settlement agreement order to allow her to receive a share of the trustee's litigation recoveries. Ebert had moved for modification of the settlement agreement order under Federal Rule of Civil Procedure 60(b)(5)—applicable to the bankruptcy court under Bankruptcy Rule 9024—arguing that prospective application of the order was no longer equitable.

"[A]ppellate review of a decision not to reopen a judgment under Rule 60(b) is deferential," and reversal is warranted only if there was an abuse of discretion. *Hill v. Rios*, 722 F.3d 937, 939 (7th Cir. 2013). Rule 60(b)(5) allows for relief from an order when its prospective application is no longer equitable; this is an "extraordinary remedy" that should be granted only in "exceptional circumstances." *Davis v. Moroney*, 857 F.3d 748, 751 (7th Cir. 2017).

Ebert argues that in denying her Rule 60(b)(5) motion, the bankruptcy court erroneously disregarded a "significant change" in circumstances that arose after 2008, when it issued the order approving the settlement agreement. Ebert Opening Br., dkt. no. 10, at 23. The purportedly significant change is that after two distributions from the settlement agreement, the state-court plaintiffs have recovered more than the full value of their proofs of claim against Emerald, while Ebert has received nothing. But Ebert fails to explain why this circumstance is so exceptional as to warrant the "extraordinary remedy" of amending the settlement agreement order. She argues, unpersuasively, that the possibility of the state-court plaintiffs recovering more than the value of their proofs of claim is exceptional because "the parties could not have anticipated" this. *Id*.

7

But Ebert does not offer any reason to believe that this was unforeseeable in 2008. And even if it was, there is nothing exceptional about the state-court plaintiffs recovering, under the terms of the settlement agreement, a sum in excess of their proofs of claim. They are simply realizing the benefit of their bargain with the trustee. The state-court plaintiffs assumed the risk of assigning their claims against Emerald's former officers to the bankruptcy trustee, and that decision paid off when the trustee was able to secure substantial settlements from the officers. Ebert offers no authority—none—to support the proposition that she is entitled to undo her choices not to join the state-court lawsuit or object to the settlement agreement, largely on the basis that these turned out to be bad decisions.

In sum, the state-court plaintiffs' substantial litigation recoveries, in excess of their proofs of claim, is not an exceptional circumstance warranting an amendment of the settlement agreement approval order. The bankruptcy court did not abuse its discretion in denying Ebert's Rule 60(b)(5) motion.

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment affirming the decision of the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 26, 2020

8